[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was brought and tried as a Court case joined with a jury case (Braverman v. Harris, Docket Number CV93-0530800S) in which both of the litigants were the same. The plaintiff in this Court case was the defendant in the case tried to the jury. The jury case was tried on two theories, assault and negligent assault. The jury resolved both issues in favor of this plaintiff (then defendant Dwight Harris).
In support of a claim of res judicata, the plaintiff Dwight Harris contends that since the parties in the jury case were identical to the parties in the instant case, it follows that the jury decision is res judicata as to the liability of Harris in this case; that there is no theory which would justify a finding against Harris in the instant case in view of the jury decision, the jury having concluded that either Harris was justified in using self-defense or that Braverman was the aggressor; but, that under either theory Harris did nothing that violated State law. The plaintiff Harris cites as authority for his claim the case ofOrselet v. DeMatteo, 206 Conn. 542 (1988) in which that court stated, "the doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." at 544.
In Braverman v. Harris, the jury case, the issue was whether Harris had assaulted John Braverman. In the instant case, the issue is whether Braverman intentionally assaulted Dwight Harris. The issues are different. Therefore a claim of res judicata does not lie. Accordingly this court will decide both the liability CT Page 4376 and damages issues in the instant case.
The facts are as follows. The plaintiff Dwight C. Harris and the defendant John Braverman in June of 1993 were both residents of Johnnycake Mountain Road in Burlington, Connecticut. Both were neighbors and knew each other socially.
During June of 1993 Dwight Harris and his wife were going through a contentious divorce action. During the pendency of the action both were continuing to occupy the family home and, under an agreed upon arrangement, had certain days when each had exclusive control of the children and the other was to absent himself or herself from the house during those periods of exclusive control.
On June 11, 1993 Dwight Harris had the children. Mrs. Harris had spent a part of the morning playing tennis with her nineteen year old neighbor John Braverman, the defendant. After tennis the two returned to the Harris house for a cold drink. Just before Mrs. Harris and John Braverman arrived at the Harris house, Dwight Harris had come home and was in the process of making a phone call when Mrs. Harris and John Braverman arrived and went into the kitchen.
When Dwight Harris got off the phone he went into the kitchen and upon seeing John Braverman there ordered him out of his house. Mrs. Harris told Braverman to stay put, that it was also her house. Whereupon Dwight Harris took hold of Braverman's arm and started to move him toward the back door. Braverman shook loose, a struggle ensued with both ending up on the floor. At one point Braverman was on top of Harris punching him. At another point Harris managed to flip Braverman over on his back and got a wrestling hold on him which kept Braverman pinned down. At this point Harris told his wife to call the police. Her call resulted in the arrival of the police and an ambulance at the scene.
Just before the arrival of the police and ambulance Harris released his hold on Braverman and left the house. Harris picked up his pre-school child whom he had left in his truck parked alongside the house and went to a company owned house directly across the street from his home. Once there he called the school where his other children were in attendance and cancelled the field trip which he had planned for a class of school children. He then called his attorney and thereafter got himself to a walk-in clinic where he was found to have bruises and contusions and CT Page 4377 at one point during the examination lost consciousness for 20 seconds. He was noted as being visibly shaken and unsteady.
In the meantime Braverman was helicoptered to St. Francis Hospital because of concerns he may have suffered a concussion. This concern stemmed from what turned out to be an inaccurate description of the altercation given to the medics in attendance by an unidentified source. A battery of tests performed on Braverman all came up negative. The only visible injury was a small cut above one eye and a bruised knee. Braverman was kept overnight at St. Francis Hospital and released the next day.
Neither Harris nor Braverman required or received any further medical treatment which related to their altercation.
The plaintiff claims assault and battery at the hands of the defendant and that such assault and battery were intentional, wanton, or done with intentional disregard to the consequence thereof. More specifically the plaintiff claims that the defendant used excessive and unreasonable force with intent to cause physical injury; that the defendant used excessive and unreasonable force with intent to cause physical injury in violation of C.G.S. § 53a-19; that the defendant intentionally used excessive and unreasonable force as an initial aggressor in violation of C.G.S. § 53a-19; that the defendant deliberately assaulted and battered the plaintiff without cause in violation of C.G.S. § 53a-19.
Intentional and wanton misconduct is something more than mere negligence. It requires a conscious choice of a course of action either with knowledge that it will involve serious danger to others or with knowledge of acts which would disclose this danger to any reasonable man. To constitute wanton misconduct the actor must be conscious from his knowledge of surrounding circumstances and existing conditions that his conduct will naturally or probably cause injury. Misconduct to be willful, must result from a design purpose and intent to do wrong and inflict injury.Markey v. Santangelo, 195 Conn. 76, 78 (1985); Alteriri v.Colasso, 168 Conn. 329, 333 (1975).
In the instant case Braverman was a visitor in the Harris home having been invited there by Mrs. Harris. His reluctance to leave after being ordered out by Dwight Harris stemmed from Mrs. Harris's request that he stay. At this point Dwight Harris put his hand on John Braverman's arm. Braverman moved to shrug him CT Page 4378 off. Thereafter, they were both going at each other and both end up rolling around on the floor. Harris appeared to have gotten the worst of it. However, merely because the plaintiff received more blows than he gave cannot be the basis for the court's concluding that Braverman's behavior was wanton and reckless. The most that can be said about this altercation is that Harris and Braverman got into a fight which started with Harris taking hold of Braverman's arm. Blows were exchanged which resulted in relatively minor injuries to both.
This court concludes on the facts found that John Braverman during this altercation did not use excessive and unreasonable force with intent to cause physical injury to Dwight Harris. This court finds that Braverman was not the initial aggressor intentionally using excessive and unreasonable force in violation of C.G.S. § 53a-19.
C.G.S. § 53a-19 provides in pertinent part:
 (a) . . . a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force . . .
The evidence is clear that Dwight Harris made the first move and that what followed was a mutual exchange of lashing out actions with each going after the other. In the context of that scenario it cannot be said that Braverman deliberately assaulted and battered the plaintiff.
The plaintiff Dwight Harris has failed to carry his burden of proving by a preponderance of the evidence that Braverman's actions constituted willful and wanton misconduct. It was at best an unfortunate overreaction to Dwight Harris's hands on ordering him out of the house which escalated into a free-for-all exchange between them.
Judgment may enter in favor of the defendant John Braverman.
Henessey, Judge